# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2745 | **DATE** | 11/15/2002 |
| **CASE TITLE** | Jackson vs. Intl Brotherhood of Teamsters | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 12/2/2002 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. For the foregoing reasons, the Court grants in part and denies in part defendants' motion to dismiss. The Court grants the motion as to (1) the Title VII claims against Zero in Counts I and III; (2) the section 1981 claims in Count II and III; the section 1983 claim in Count IV; and (4) the defamation claim in Count V. The Court denies the motion to dismiss the Title VII claims against the Union in Count I and III, and, thus, those are the only claims that remain.

(11) ■ [For further detail see order attached to the original minute order.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN
# DIVISION

| | | |
|---|---|---|
| BENNIE JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| INTERNATIONAL BROTHERHOOD | ) | 02 C 2745 |
| OF TEAMSTERS, LOCAL UNION | ) | |
| NO. 705 and GERALD ZERO, | ) | |
| | ) | DOCKETED |
| Defendants. | ) | |

NOV 1 8 2002

## MEMORANDUM OPINION AND ORDER

Pending before the Court is defendants International Brotherhood of Teamsters, Local Union No. 705 ("Union") and Gerald Zero's ("Zero") motion to dismiss plaintiff Bennie Jackson's complaint in whole or in part pursuant to FED. R. CIV. P. ("Rule") 12(b)(6) and 12(b)(1).[1] For reasons set forth below, defendants' motion is granted in part and denied in part.

## FACTS

The following facts are taken as true from the complaint. Jackson is an African American male who has been employed with the Defendant Union as a business agent/representative since 1994. (Compl. ¶¶ 5, 9.) In 1995, Jackson was elected to also serve as recording secretary on the Union's executive committee. (Id. ¶ 25.) Jackson was re-elected to this position in 1997 for a second term through 2000. (Id.) Defendant Zero is a white male who

---

[1] Although defendants bring this motion pursuant to Rule 12(b)(6) and Rule 12(b)(1), all of their arguments are, in essence, based on plaintiff's failure to state a claim. Accordingly, the Court addresses defendants' motion as a Rule 12(b)(6) motion.

serves as secretary-treasurer on the Union's executive board. (*Id.* ¶ 15.) Beginning in February 2000 and continuing through March 31, 2000, defendants participated in a course of conduct that forms the basis of Jackson's complaint. (*Id.* ¶ 28.) During this time Zero verbally abused Jackson at executive board meetings, calling him "stupid" and "g_dd__n goofball," mimicking his ethnic speech patterns and making ethnic slurs. (*Id.*) Zero also used Jackson's work product, on which Jackson's name was prominently displayed, to illustrate to board members examples of bad work. (*Id.* ¶¶ 31-33.) At the same time, Zero used examples of a white employee's work product to illustrate good work. (*Id.*)

Zero allegedly did not treat white employees in this same manner, and in February 2000, Jackson filed internal charges against Zero with the Local E Board, Joint Council 25, the Executive Board of the International Brotherhood of Teamsters, and the Independent Review Board alleging race discrimination. (*Id.* ¶ 57.) On March 17, 2000, while Jackson was away from his office, Zero evicted Jackson from his office in retaliation for filing the internal charges. (*Id.* ¶ 43.) Zero removed Jackson's office equipment and piled his personal belongings in the hallway outside the office, leaving them unattended. (*Id.* ¶ 44.) Zero also changed the lock on the door. (*Id.* ¶ 47.) When Jackson returned to his office, he noticed that some of his personal belongings and confidential union files were missing and tried to enter the office. (*Id.* ¶ 46.) However, secured with a new lock, Jackson was unable to open the door with his key. (*Id.* ¶ 47.) Zero repeatedly refused to allow Jackson into the office until Chicago police officers threatened to arrest him. (*Id.* ¶ 48.) Zero claimed that he moved Jackson out of the office to make space for a Union organizer, Paul DeGrazio, a white male. (*Id.* ¶ 53.) DeGrazio was of a lower Union rank than Jackson, and other organizers, who were African-American, were not given offices with doors. (*Id.* ¶¶ 53-54.) After this incident, another employee told Jackson that he had never

seen Union management evict any other employee from their office. (*Id.* ¶ 55.) During this time, in another case and before another court, Jackson and others sued the Union for a preliminary injunction to stop the conduct. (*Id.* ¶ 67.) *See McCormick v. Zero*, 110 F. Supp. 2d 716 (N.D. Ill. 2000), *vacated by* No. 00-3263, 2001 WL 219404 (7th Cir. Mar. 2, 2001) (vacating district court's entry of preliminary injunction based on mootness due to plaintiffs' loss of subsequent election and concomitant loss of entitlement to salaries and office privileges); *see also Jackson v. Zero*, 134 F. Supp. 2d 978 (N.D. Ill. 2001).

On March 31, 2000, Jackson filed a complaint against the Union and Zero with the Illinois Department of Human Rights ("IDHR"). (*Id.* ¶ 69.) The IDHR cross-filed the complaint with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 72.) Jackson's charge alleged race discrimination and retaliation in violation of Title VII of the Civil Rights Act. (*Id.* ¶ 69.) On April 17, 2000, in retaliation for filing the lawsuit against the Union, Zero discharged Jackson – a move that exceeded his authority within the Union. (*Id.* ¶¶ 60-61.) On January 17, 2002, the EEOC issued a right to sue letter and on April 16, 2002, Jackson filed this lawsuit against Zero and the Union. (*Id.* ¶ 73.)

Count I of Jackson's complaint alleges violations of Title VII. (*Id.* ¶ 78.) Count II alleges race discrimination in violation of 42 U.S.C. § 1981. (*Id.* ¶ 89.) Count III seeks relief for retaliation and reprisal under Title VII and 42 U.S.C. § 1981. (*Id.* ¶ 94.) Count IV alleges First Amendment and 42 U.S.C. § 1983 violations. (*Id.* ¶ 99.) And Count V alleges defamation. (*Id.* ¶ 106.)

## DISCUSSION

When ruling on a Rule 12(b)(6) motion to dismiss, the court must consider "whether relief is possible under set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). In deciding a motion to dismiss, the court must consider all allegations of the complaint as true and must draw all reasonable inference in favor of the plaintiff. *Pickrel v. City of Springfield*, 45 F.3d 1115, 1116 (7th Cir. 1995).

### I.     Jackson's Defamation Claim

In Count V of the complaint, Jackson alleges defamation under Illinois law arising from statements Zero made in February and March of 2000, as well as in association with Jackson's termination on April 17, 2000. (Compl. ¶ 104.) Defendants argue that Illinois' statute of limitations bars Jackson's defamation claim. In Illinois, "[a]ctions for slander . . . [and] libel … shall be commenced within one year next after the cause action accrued." 735 ILL. COMP. STAT. 5/13-201 (2000). In this case, Jackson did not file his complaint until April 16, 2002, over two years after his defamation claim accrued. Jackson concedes as much in his response to defendants' motion to dismiss. The Court therefore dismisses Jackson's defamation claim with prejudice.

## II. Jackson's Section 1983 Claim

Jackson alleges in Count IV of the complaint that defendants denied him rights guaranteed by the laws of the United States while acting under of the color of state law, thus violating 42 U.S.C. § 1983. (Compl. ¶ 98-103.) To recover on a section 1983 claim, the plaintiff must establish that (1) he was deprived of a right secured by federal law or the Constitution, (2) by the defendant acting under color of State law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). Defendants seek to dismiss this claim arguing that section 1983 does not apply in this case because neither the Union nor Zero are state actors acting under color of state law.

Section 1983 protects individuals from unlawful conduct by the state, and does not apply to actions by a private individuals or private entities. *Id.* Labor unions are generally regarded as private entities that fall outside of section 1983's reach. *Hudson v. Chicago Teachers Union Local No. 1*, 743 F.2d 1187, 1191 (7th Cir. 1984), *aff'd*, 475 U.S. 292 (1986). However, "when a private entity such as a union acts in concert with a public agency to deprive people of their federal constitutional rights, it is liable under section 1983." *Id.* When a plaintiff brings a section 1983 claim against an individual or entity that ordinarily does not act under color of state law, the plaintiff must allege that the entity conspired with state actors to violate constitutional rights. *Tower v. Glover*, 467 U.S. 914, 920 (1984).

In the present case, Jackson's complaint includes a conclusory statement that defendants deprived him fundamental rights while acting under color of state law. However, Jackson fails to allege that defendants, who do no normally act under color of state law, conspired with a state actor in doing so. Jackson clearly concedes as much in his response to defendants' motion to dismiss. Absent allegations of state directed action, Jackson cannot prevail on a section 1983

claim. Thus, the Court dismisses Count IV of the complaint with prejudice.

### III. Jackson's Title VII Claims

In Counts I and III of the complaint, Jackson seeks to hold the Union, and Zero in his individual capacity, liable under Title VII of the Civil Rights Act. In Count I, Jackson alleges race discrimination, and in Count III, Jackson alleges retaliatory discharge. In their motion to dismiss, defendants argue the Court lacks subject matter jurisdiction over these claims because Jackson is not an "employee" within the meaning of Title VII, and therefore cannot seek its protections. In particular, defendants argue that as an elected member of the Union's board, Jackson is a union director, a position more akin to an employer position rather than an employee position. Defendants also argue that as an elected board member, Jackson should fall within the "elected official" exception to the statutory definition of employee.

Title VII of the Civil Rights Act allows employees to sue employers who "discriminate against [them] with respect to [their] compensation, terms, conditions, or privileges of employment, because of [their] race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2 (2000). To maintain an actionable Title VII claim, the plaintiff must establish that the alleged discrimination took place within the context of an employee-employer relationship. *Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487, 492 (7th Cir. 1996). Title VII defines "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f) (2000). Although the statute's circular definition provides little meaning to the term, Congress intended courts to give "employee" a broad construction, in order to protect all workers who may be subject to the invidious workplace discrimination Title VII is designed to prevent. *EEOC v. First Catholic Slovak Ladies Ass'n*, 694 F.2d 1068, 1070 (6th Cir. 1982). Thus, the term employee "must be

6

read in light of the mischief to be corrected and the end to be attained." *Armbruster v. Quinn*, 711 F.2d 1332, 1340 (6th Cir. 1983).

The appropriate measure for determining whether an individual is an employee within the meaning of Title VII is "whether an employer-employee relationship exists." *Chavero v. Local 241*, 787 F.2d 1154, 1157 (7th Cir. 1986). Whether the employer-employee relationship exists hinges on whether the individual performs traditional employee duties. *Id.*

In arguing that Jackson is not an employee within Title VII's definition, defendants cite *Chavero v. Local 241* for the proposition that "directors are traditionally employer rather than employee positions." 787 F.2d at 1157. However, to the extent Jackson is a director, a "director may accept duties that make him also an employee." *Id.* Indeed, "whether an individual is an employee ... should not center on the label which the organization has chosen to give to the position." *See First Catholic Slovak Ladies Ass'n*, 694 F.2d at 1070 (interpreting the ADEA's identical definition for employee); *see also Zimmerman v. N. Am. Signal Co.*, 704 F.2d 347, 352 n.4 (7th Cir. 1983) (stating that "the issue is whether an employer-employee relationship exists, not what title the worker holds"), *rejected on other grounds by Walters v. Metro. Educ. Enters.*, 519 U.S. 202, 205-12 (1997).

In *Chavero*, the Seventh Circuit determined whether members of a union's executive board, responsible for supervising and directing management, were employees within the meaning of Title VII. *Id.* at 1156. Looking past their titles as directors, the court found the board members were not employees because they did not perform traditional employee duties or maintain the Union's daily operations. *Id.*

In *Zimmerman v. North American Signal Co.*, the court found that corporate directors were not employees within the meaning of the ADEA because it was "undisputed that [the

7

directors] took no active role in the daily affairs of the corporation." 704 F.2d at 351. The court stated in an accompanying footnote, "the issue is whether an employer-employee relationship exists, not what title a worker holds." 704 F.2d at 352 n.4. In *Grantham v. Beatrice Co.*, the court held that a corporation's board of directors were employees within the meaning of the ERISA statute, finding these people were not merely detached board members, but "managed the daily affairs of [the] company, maintained offices there and drew salaries" as well as attended regular company meetings. 776 F. Supp. 391, 403-04 (N.D. Ill. 1991).

These cases persuade the Court to hold that Jackson's job title is irrelevant for purposes of determining whether Jackson is an employee within the meaning of Title VII. Instead, what is important is whether he has performed traditional employee functions. Although Jackson's exact job description is unclear, his complaint indicates that he was directly involved in the Union's daily operations. Jackson maintained an office at the Union and drew a salary from the Union. In addition to his board position, Jackson has alleged that he was also employed by the Union as a "business agent." Jackson was responsible for recruiting Union stewards and preparing activity reports. These allegations taken as true clearly indicate that Jackson was more than a "detached" board member, but instead was involved in the Union's daily operations. Therefore, the Court concludes that Jackson has sufficiently alleged an employment relationship with the Union to maintain his Title VII claims.

Furthermore, the Court declines defendants' invitation to extend the "elected official" exception to the employee definition to encompass elected union officials. Title VII's definition of employee excludes "any person elected to public office in any state or political subdivision of any state by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level." 42 U.S.C. § 2000e(f)

(2000). This exemption, which courts must construe narrowly, exempts high-level members of state and local government who are responsible for making policy decisions. *O'Neill v. Ind. Comm'n Of Pub. Records*, 149 F. Supp. 2d 582, 587 (S.D. Ind. 2001). Defendants claim that the analogy to exempt elected officials and their policy-making staff makes particular sense when discussing elected officials of labor unions because the exemption was designed to avoid judicial interference with the election process. Defendants argue that this same reasoning should apply to elected officials within a labor union, who are elected pursuant to federal statute.

However, extending the exception to encompass elected union officials makes little sense in light of Title VII's statutory history. When Title VII was originally enacted, it only applied to private employers. *Id.* When Congress amended Title VII to include state and local government, it also amended the statutory definition of "employee" to exclude high-level government officials. *Id.* Congress included the exception "to avoid federal interference in the selection of key public officials by the states." *Id.* Congress only intended the exception to encompass elected and appointed policymakers at the highest levels of state and local government. *Id.* It is unclear how extending the elected official exception to include elected union officials will avoid federal interference with state and local government efforts to select its key public officials. For the foregoing reasons, the Court finds that Jackson has sufficiently alleged that he is an "employee" within the meaning of Title VII and therefore denies defendants' motion to dismiss Jackson's Title VII claims against the Union on this ground.

Jackson also alleges a hostile work environment claim in Count III of the complaint, stating that defendants' race discrimination "permeate[d] and foster[ed] a hostile environment." Defendants argue that the Court should dismiss this claim because (1) it was not included in Jackson's charges to the EEOC, and (2) it was not properly plead.

The general rule is that a plaintiff cannot bring Title VII claims in federal court that were omitted from the plaintiff's EEOC charge. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). However, because most EEOC charges are filed by laypersons, a plaintiff may pursue claims in federal court, although not expressly alleged in the EEOC charge, if the allegations fall within the scope of those described in the charge. *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996). Allegations fall within the scope of the charge when there is a reasonable relationship between allegations in the charge and the complaint and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of allegations in the charge. *Cheek*, 31 F.3d at 500. Courts focus on whether the complaint and the charge describe the same conduct and implicate the same individuals. *Id.* at 501.

Jackson filed his EEOC charge against the Union and Zero alleging racial discrimination and retaliation. Jackson's allegations of wrongdoing in the EEOC charge mirror those alleged in his complaint. In both the complaint and the charge, Jackson alleged that Zero openly criticized his work to co-workers, while praising the work of white counterparts; that Zero verbally abused Jackson with racial slurs and referred to him as "stupid" and a "g_dd__n goofball;" that Zero mimicked Jackson's ethnic speech patterns; that Zero evicted Jackson from his office in retaliation for filing an internal complaint with the Union; and that Zero did not treat non-black employees in the same manner.

Any EEOC investigation into these facts would reasonably relate to an investigation into the hostile work environment claims at issue in the present case. Thus, although not specifically alleged in the EEOC charge, Jackson's hostile work environment claim is sufficiently within the charge's scope.

Defendants also challenge the sufficiency of Jackson's hostile work environment claim.

10

The federal rules only require "a short plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff need not provide specific legal theories in a complaint as long as the complaint presents enough facts to give defendant notice of the plaintiff's claim. *Sanders v. City of Chicago*, No. 98 C 5838, 2000 WL 198901, at *4 (N.D. Ill. Feb. 15, 2000). To allege properly a hostile work environment under Title VII, the plaintiff must allege facts illustrating conduct by the defendant that had "the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment." *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir. 1993). The defendant's conduct must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Id.* (quotations omitted). A court must look at the totality of the plaintiff's allegations, while focusing on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

In this case, Jackson has pleaded that (1) Zero verbally abused him, at times, with racial slurs; (2) Zero mimicked his ethnic speech pattern; (3) Zero used Jackson's work, with Jackson's name clearly displayed on it, to illustrate to board members examples of bad work; (4) Zero continued this practice even after Plaintiff complained to him about it; (5) Zero, in retaliation for Jackson's February 2000 internal complaint, evicted Jackson from his office, leaving his personal belongings in the hallway unattended; and that (6) Zero fired Jackson in retaliation for filing discrimination claims with the IDHR and the EEOC. While there is no "threshold magic number of harassing incidents that give rise" to a cause of action, at this stage in the proceedings, the Court concludes that plaintiff has sufficiently alleged a claim of hostile work environment.

11

Thus, the Court denies defendants' motion to dismiss Jackson's hostile work environment claim against the Union.

Defendants finally urge the Court to dismiss Jackson's Title VII claims in Counts I and III against Zero because supervisors cannot be held individually liable under Title VII. Title VII provides employees victimized by workplace discrimination a cause of action against their employers. 42 U.S.C. § 2000e (2000). An "employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such person." 42 U.S.C. § 2000e(b) (2000). Supervisors, however, are not employers within the meaning of Title VII and cannot be held individually liable. *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995) (dismissing plaintiff's claims against a supervisor in his individual capacity because a supervisor does not fall within Title VII's definition "employer").

Jackson argues that Zero should be liable in his individual capacity because he is an "alter ego" of the Union. Under the alter ego theory, Jackson argues, "a supervisor may be liable as an 'employer' under Title VII when the supervisor's role is more than that of a mere supervisor but is actually identical to that of the employer." *Curcio v. Chinn Enters., Inc.*, 887 F. Supp. 190, 194 (N.D. Ill. 1995).

In *Curcio v. Chinn Enters., Inc.*, employees brought a Title VII action for sex harassment against Chinn, their supervisor. *Id.* The court found that Chinn could be individually liable under Title VII because he was "more than a mere supervisor, but was in all respects the actual employer because he was the controlling shareholder and the main decisionmaker." *Id.* In this case, however, Zero is not the Union's controlling shareholder, or primary decisionmaker. Zero is but one member of the Union's executive committee, and does not have the authority to act as the Union's alter ego. Furthermore, as the *Curcio* court recognized, the Seventh Circuit has

rejected the alter ego theory for holding supervisors liable under the ADA. *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1281 n.11 (7th Cir. 1995). The Seventh Circuit is unlikely, therefore, to adopt such a theory for holding supervisors individually liable under Title VII. *Solon v. Kaplan*, No. 00 C 2888, 2001 WL 123769, at *3 (N.D. Ill. Feb. 13, 2001). This Court holds that Zero cannot be held liable in his individual capacity under Title VII, and accordingly dismisses Jackson's Title VII claims against Zero with prejudice.

## IV. Plaintiff's Section 1981 Claims

In Count II of the complaint, Jackson alleges that defendants violated 42 U.S.C. § 1981 based on a pattern of harassment and unequal treatment. In Count III, Jackson alleges that defendants violated 42 U.S.C. § 1981 when they fired him in retaliation for filing discrimination charges against defendants with the IDHR and the EEOC. Defendants urge the Court to dismiss Jackson's section 1981 claims because (1) they are precluded by Illinois' two-year statute of limitations, and (2) Jackson has failed to allege that defendants violated any of Jackson's statutorily protected contract rights.

Illinois' two-year statute of limitations for personal injuries governs federal section 1981 claims. *Smith v. City of Chicago Heights*, 951 F.2d 834, 839 (7th Cir. 1992). The two-year period begins when the plaintiff knows or reasonably should know the defendant's conduct deprived him of his constitutional rights protected by section 1981. *Jones v. Merchs. Nat'l Bank & Trust Co. of Indianapolis*, 42 F.3d 1054, 1058 (7th Cir. 1994). To make out an actionable section 1981 claim, the plaintiff must allege unlawful discrimination during the relevant two-year time period. *Id.*

In Count III, Jackson alleges that defendants wrongfully terminated him "in retaliation for filing charges against Zero and the Teamsters." Defendants terminated Jackson on April 17, 2000. Jackson knew at this time defendants' conduct violated section 1981. Jackson filed his complaint on April 16, 2002, a day before the statutory deadline. The statute of limitations, therefore, does not bar this claim.

In Count II, Jackson alleges racial discrimination based on a pattern of harassment and unequal treatment, citing a number of defendants' acts between February and March 2000 to substantiate this claim. Beginning in February 2000 and continuing through March 31, 2000, Zero verbally abused Jackson at executive board meetings using racial slurs and calling him "stupid" and "g__dd__n goofball." Zero also harassed Jackson by mimicking his speech patterns, "supposedly [to] stereotype and typify Black persons." During this time, Zero did not treat non-minority co-workers in this manner. Also during this time period, Zero consistently used Jackson's work product, which prominently displayed Jackson's name, to illustrate to the executive board examples of bad work. At the same time, Zero used samples of a white co-worker's work product to illustrate good work. Zero continued this conduct even after Jackson complained that it was racially disparaging. At some point in February 2000, Jackson filed an internal complaint with the Union and the Independent Review Board, charging Zero with racial discrimination. On March 17, 2000, in retaliation for filing the internal complaint, Zero evicted Jackson from his office, removing Jackson's office equipment and leaving his personal belongings unattended in the hallway. Zero changed the lock on the office door and refused Jackson's entry until Chicago police officers threatened to arrest him. At this point, another employee informed Jackson he had never seen other Union employees treated in this manner. Finally, on March 31, 2000, Jackson filed charges with the IDHR and the EEOC claiming race

14

discrimination. At the very latest, Jackson knew that defendants' discriminatory conduct violated his constitutional rights on March 31, 2000 when he filed his IDHR and EEOC charges and the limitations period began running on that date. Because Jackson did not file his complaint until April 16, 2002, the Court dismisses Count II of Jackson's complaint with prejudice.

However, because the statute of limitations does not bar Jackson's section 1981 claim based on the alleged retaliatory conduct in Count III, the Court must consider whether Jackson has properly alleged that defendants violated his statutorily protected contract rights. To make out a viable section 1981 claim, the plaintiff must allege that he was discriminated against on the basis of race while engaging in statutorily protected activities. *See Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996) (holding that an actionable claim must concern activities enumerated in the statute); *see also Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 938-39 (7th Cir. 1996) (stating that to make out a section 1981 claim for retaliation, the plaintiff must allege that she engaged in statutorily protected expression). Section 1981 protects "all persons within the jurisdiction of the United States" from racial discrimination in making and enforcing contracts. 42 U.S.C. § 1981 (2000)(a). Making and enforcing contracts includes "the making, performance, modification and termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). This list is not exhaustive, and encompasses retaliatory firing based on race. *Gonzales v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1034 (7th Cir. 1998). However, by its very terms, section 1981's protections from racial discrimination are limited to discrimination arising out of a contractual relationship. *Id.* Thus, "[i]n order to bring a section 1981 claim there must at least

be a contract." *Id.*; *see also Truitt v. United Parcel Serv. of Am., Inc.*, No. 97 C 5618, 1998 WL 911758, at *1 (N.D. Ill. Dec. 23, 1998) (stating that "[t]he law clearly requires a contractual relationship to exist in order to sustain a [s]ection 1981 claim"). While it is true that the federal pleading system is liberal, "a plaintiff must still set forth all the essential elements necessary to maintain a claim." *Truitt*, 1998 WL 911758, at *1.

Jackson's complaint in this case fails to allege any facts regarding a contract or contractual relationship with the Union. And without a contract right violation, there is no set of facts under which Jackson can recover under section 1981. *See Truitt*, 1998 WL 911758, at *1 (dismissing a section 1981 claim because the plaintiff failed to plead a contractual relationship); *see also Gonzales*, 133 F.3d at 1034 (stating that a section 1981 claim is not proper without a contractual relationship). Accordingly, the Court dismisses Jackson's section 1981 claim in Count III without prejudice. *See Truitt*, 1998 WL 911758, at *1 (dismissing without prejudice plaintiff's section 1981 claim that failed to allege a contractual relationship).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part defendants' motion to dismiss. The Court grants the motion as to: (1) the Title VII claims against Zero in Counts I and III; (2) the section 1981 claims in Counts II and III; (3) the section 1983 claim in Count IV; and (4) the defamation claim in Count V. The Court denies the motion to dismiss the Title VII claims against the Union in Counts I and III, and, thus, those are the only claims that remain.

**SO ORDERED.**     **ENTER:**

HON. RONALD A. GUZMAN
**United States Judge**

16